UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KYLE WALLACE<br>    Plaintiff | )<br>)<br>) |
| v. | )<br>) |
| SENTINEL INSURANCE COMPANY,<br>LIMITED, HARTFORD UNDERWRITRS<br>INSURANCE, CO., and ACE AMERICAN<br>INSURANCE, COMPANY<br>    Defendant | )<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT**

### PARTIES

1. Kyle Wallace is an individual who resides at 64 Fresh Pond Road, East Falmouth, MA 02536.

2. Sentinel Insurance Company, Limited (hereinafter "Sentinel") is an insurance company doing business in the Commonwealth of Massachusetts with a principal place of business at One Hartford Plaza, Hartford, Connecticut and is engaged in the business of insurance, including claims settlement.

3. Harford Underwriters Insurance, Co. (hereinafter "Hartford") is an insurance company doing business in the Commonwealth of Massachusetts with a principal place of business at One Hartford Plaza, Hartford, Connecticut and is engaged in the business of insurance, including claims settlement.

4. ACE American Insurance Company (hereinafter "ACE") is an insurance company doing business in the Commonwealth of Massachusetts with a principal place of business at 436 Walnut Street, Philadelphia, Pennsylvania and is engaged in the business of insurance, including claims settlement.

### JURISDICTION

5. This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C., § 1332 because the plaintiff and defendants are citizens of different states and the Plaintiff seeks damages in excess of $75,000.00.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) as Plaintiff resides in Massachusetts and 28 U.S.C., § 1391(b)(2) because the accident occurred in Hingham, Massachusetts.

## FACTS

7. On or about November 30, 2019, the plaintiff was a passenger in an aerial lift at a construction site located near 300 Beal Street, Hingham, Massachusetts. (the "Project").

8. The project was titled the "Bare Cove Project."

9. On or about November 30, 2019, the plaintiff was an employee of Quish W.C., Inc.

10. On or about November 30, 2019, Callahan, Inc. ("Callahan") was the general contractor for the project and was responsible for managing the project and supervising the subcontractors who were working at the Project.

11. On or before November 30, 2019, Callahan, as general contractor, hired E. Alves Cleaning Services, Inc. to perform work on the project.

12. On or before November 30, 2019, E Alves hired Quish W.C., Inc. to perform work on the project, specifically washing the outside windows of the Project.

13. On or before November 30, 2019, Callahan hired Shepardville Construction, LLC ("Shepardville") to perform work on the Project.

14. On November 30, 2019, the plaintiff arrived at the Project with a co-worker Michael Moran to wash exterior windows while utilizing an aerial lift.

15. A Callahan employee instructed the plaintiff and Mr. Moran to use a green lift when they arrived at the jobsite.

16. Shepardville rented the subject lift that the plaintiff and Mr. Moran were to use while cleaning the exterior windows.

17. A Shepardville employee also identified the lift that the plaintiff and Mr. Moran were to use while cleaning the exterior windows.

18. Shepardville left the key in the aerial lift and Mr. Moran found that key when he accessed the aerial lift.

19. Immediately prior to the accident, the plaintiff and Mr. Moran were using the aerial lift to clean to wash windows on the fourth floor of the building.

20. Mr. Moran operated the lift and drove the lift around the jobsite.

2

21. Mr. Moran relied on previous aerial lift tracks on the ground in the area where the plaintiff and Mr. Moran were washing windows.

22. Mr. Moran and the plaintiff had the boom extended and had just lowered the boom from the fifth floor to the fourth floor when the wheels furthest from the building began to slip and the lift fell down an embankment.

23. The aerial lift then tipped over, which caused Mr. Wallace to fall forty feet and sustained serious and permanent injuries including: a Grade IV splenic laceration with active extravasation; left seventh, nineth, tenth and eleventh posterior rib fractures; manubrium fracture with small amount of surrounding blood; small left pneumothorax; trace left pleural effusion; right L1 transverse process fracture; right comminuted displaced, impacted tibial plateau fracture and left elbow fracture.

24. Due to these injuries, the plaintiff's medical bills total approximately $176,870.41. Mr. Wallace's lost wages total approximately $64,532.00 and his future lost earning capacity totals approximately $525,000.00.

25. As of November 30, 2019, Defendant Sentinel provided liability insurance coverage to E. Alves Cleaning Services.

26. As of November 30, 2019, Defendant Hartford provided liability insurance coverage to Callahan.

27. As of November 30, 2019, Defendant ACE provided liability insurance coverage to Shepardville.

28. As a result of the crash, the plaintiff filed suit against E. Alves, Callahan and Shepardville on July 12, 2021.

### Liability is Reasonably Clear Against Sentry's Inured E. Alves

29. Discovery has shown that E. Alves retained control over Quish W.C.'s work. Callahan's Superintendent for the Cathal McDonagh testified that E. Alves was responsible for ensuring that the requisite manpower was present when Callahan requested that exterior windows be washed.

30. E. Alves' owner Eduarda Alves testified that she looked at the exterior windows that Quish W.C. cleaned in the past requested that Quish W.C. clean the inspected windows because she was not satisfied with Quish W.C.'s work.

31. Due to E. Alves retaining control of Quish W.C.'s work, E. Alves had a duty to exercise control with reasonable care for the safety of the plaintiff and others. E. Alves breached that duty on November 30, 2019.

32. E. Alves also failed to comply with numerous terms of its contract with Callahan. Section 3.1.2 states, "The subcontractor shall not assign this Subcontract without the written consent of the contractor…nor further subcontract portions of this Subcontract without written consent of the Contractor."

33. Ms. Alves never received written consent of Callahan before assigning the exterior window cleaning to Quish W.C.

34. The contract executed between Callahan and E. Alves also required, "A site specific Safety Plan and Health Plan shall be submitted to the Superintendent for review." E. Alves never provided a site specific safety manual.

35. Section 3.2.8 of the subcontract executed between Callahan and E. Alves states, "The Subcontract shall provide a full-time, qualified, competent supervisor to the Project on a daily basis. Such supervisor shall be able to effectively communicate with Contractor's personnel and other trades, shall be knowledgeable and trained in the Work being performed under this Subcontract, and shall be present whenever Work is being performed under this Subcontract."

36. Eduarda Alves did not know Section 3.2.8 was her responsibility and failed to provide a competent person at the Project when Quish W.C. performed its work.

37. Despite being responsible for supervising subcontractors, E. Alves did not know when its subcontractors were on site.

38. E. Alves also failed to properly vet Quish W.C. and never verified Mr. Moran's qualifications to operate a lift.

### Liability is Reasonably Clear Against Defendant Hartford's insured Callahan, Inc.

39. As the Bare Cove project general contractor, Callahan had a non-delegable duty to ensure the jobsite was safe pursuant to 29 C.F.R. 1926.16(a).

40. Callahan failed to properly supervise aerial lifts on November 30, 2019.

41. Callahan's Cathal McDonagh told Mr. Moran which lift to use on the day of the accident, confirmed that the lift key that Mr. Moran would be using was on the lift but did nothing to ensure that Mr. Moran was trained or certified to operate the subject lift.

42. Callahan expected its personnel to talk to all potential aerial lift operators to determine if they were trained and ask questions to determine if they were qualified. Mr. McDonagh never determined if Mr. Moran was qualified to operate the aerial lift.

43. Callahan never performed a job hazard analysis for the subject window washing. Had a proper job hazard analysis been performed, it would have identified the edge of the berm

4

as an uncontrolled hazard and steps would have been taken to eliminate or reduce the risk the drop posed to aerial lifts.

44. Callahan also never received and never requested a job hazard analysis that the addressed the use of aerial lifts for exterior window cleaning.

45. Callahan did nothing to warn aerial lift operators about the edge of the berm through the use of snow fences, cones or spray paint that would warn others of the drop on the other side of the berm.

46. Callahan did nothing to prepare the area where the plaintiff and Mr. Moran's aerial lift was to be sued. Callahan's Justin Azbill testified that prior to allowing equipment to drive onto any surface, Callahan should have evaluated the stability and examined the grounds to ensure the ground could support the equipment, neither of which occurred on November 30, 2019.

**Liability is Reasonably Clear Against ACE's Insured Shepardville Construction, LLC**

47. Shepardville allowed Mr. Moran to use the lift involved in the accident. This was confirmed by Callahan's own safety director, Azbill testifying that he spoke with a foreman from Shepardville who was reluctant to speak with him but the foreman admitted that he made an arrangement for Mr. Moran to use Shepardville's lift for that day.

48. When Shepardville allowed Mr. Moran to use the subject aerial lift, it was in direct violation of the "Terms and Conditions" of the contract it executed when it rented the aerial lift from Sunbelt Rentals, Inc, which required, "Customer is responsible for and shall only permit properly trained, Authorized individuals to use the Equipment."

49. Shepardville also violated Section 8.10(25) of ANSI 92.5-2006, which states, "The operator shall implement means provided to protect against use by an unauthorized person" when it failed to remove the key from the aerial lift.

**Mr. Wallace has No Comparative Negligence**

50. The plaintiff has no comparative negligence as he was not operating the lift at the time of the accident.

**Damages are Reasonably Clear**

51. The plaintiff was taken by ambulance from the jobsite to South Shore Hospital, where he was hospitalized for 11 days and diagnosed with a Grade IV splenic laceration with active extravasation; seventh, nineth, tenth and eleventh posterior rib fractures; manubrium fracture with small amount of surrounding blood; small left pneumothorax; trace left pleural effusion; right L1 transverse process fracture; right comminuted, displaced, impacted tibial plateau fracture and left elbow fracture.

52. On December 1, 2019, Mr. Wallace had the following surgeries performed on him: left elbow Monteggia fracture open reduction and internal fixation; right tibial plateau fracture open reduction and internal fixation with Norian bone cement; right leg anterior and lateral compartment prophylactic fasciotomies and right leg application of incisional wound VAC.

53. After 11 days at South Shore Hospital, an ambulance transported the plaintiff to Braintree Rehabilitation Hospital, where he stayed until December 23, 2019.

54. The plaintiff received intensive physical therapy while at Braintree Rehabilitation Hospital and after.

55. The plaintiff still has a plate and seven screws in his left elbow and a plate along with 13 screws in his right shin.

56. The plate and screws in his right shin were in response to his shin being in approximately forty pieces after his fall.

57. Mr. Wallace's medical bills total approximately $176,870.41.

58. Mr. Wallace was out of work for 17 months and his lost wages based on his average weekly wage total $64,532.00.

## Settlement Negotiations

59. On March 15, 2023, Mr. Wallace made a demand of $5,000,000.00 on all three defendants.

60. Plaintiff made a demand of $5,700,000.00 on all three defendants when he served his MGL c. 93A/176D letters in February and April 2025 to reflect the significant pre-judgment interest that has accrued on this matter since the Complaint was filed on July 12, 2021.

61. To date, none of the defendants have responded to either demand with an offer.

### COUNT I VIOLATION OF M.G.L. CHAPTERS 93A AND 176D-SENTINEL

62. The plaintiff realleges and reasserts the allegations set forth in Paragraphs 1-61 above as if fully set forth herein.

63. On February 14, 2025, the plaintiff sent a MGL 93A/176D letter to Sentinel, certified mail return receipt requested, setting forth a detailed summary of the allegations of unfair and deceptive practices committed by Sentinel as well as Sentinel's willful and knowing violation of MGL c. 93A.

64. A true and accurate copy of the plaintiff's demand pursuant to MGL Chapter 93A dated February 14, 2025 is attached hereto as **Exhibit A.**

65. By letter dated March 20, 2025, Sentinel responded to the plaintiff's demand and did not make a settlement offer in response to the MGL c. 93A/176D allegations.

66. A true and accurate copy of Sentinel's response to the plaintiff's demand is attached hereto as **Exhibit B**.

67. Sentinel has committed the following unfair and deceptive acts and practices in its handling of the plaintiff's claims, including acts identified as unfair claim practices pursuant to MGL c. 176D, section 3(9);

> (d) Refusing to pay claims without conducting a reasonable Investigation based upon all available information;
>
> (f) Failing to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear

68. The unfair and deceptive acts of Sentinel were made willfully and in knowing violation of MGL. c93A and MGL c. 176D.

69. As a result of the unfair and deceptive practices and willful and knowing violations of MGL c. 93A, the plaintiff was deprived of the opportunity to engage in a timely settlement process and deprived of insurance benefits, his losses have been exacerbated, he has been otherwise damaged, and the Court should award plaintiff treble damages, plus attorneys' fees, interest and costs.

## COUNT II VIOLATION OF M.G.L. CHAPTERS 93A AND 176D-THE HARTFORD

70. The plaintiff realleges and reasserts the allegations set forth in Paragraphs 1-69 above as if fully set forth herein.

71. On February 14, 2025, the plaintiff sent a MGL 93A/176D letter to the Hartford, certified mail return receipt requested, setting forth a detailed summary of the allegations of unfair and deceptive practices committed by the Hartford as well as the Hartford's willful and knowing violation of MGL c. 93A.

72. A true and accurate copy of the plaintiff's demand pursuant to MGL Chapter 93A dated February 14, 2025 is attached hereto as **Exhibit C.**

73. On March 11, 2025, the Hartford responded to the plaintiff's demand and did not make a settlement offer in response to the MGL c. 93A/176D allegations.

74. Hartford's March 11, 2025 response is attached hereto as **Exhibit D.**

7

75. The Hartford has committed the following unfair and deceptive acts and practices in its handling of the plaintiff's claims, including acts identified as unfair claim practices pursuant to MGL c. 176D, section 3(9);

    (d) Refusing to pay claims without conducting a reasonable Investigation based upon all available information;

    (f) Failing to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear

76. The unfair and deceptive acts of the Hartford were made willfully and in knowing violation of MGL. c93A and MGL c. 176D.

77. As a result of the unfair and deceptive practices and willful and knowing violations of MGL c. 93A, the plaintiff was deprived of the opportunity to engage in a timely settlement process and deprived of insurance benefits, his losses have been exacerbated, he has been otherwise damaged, and the Court should award plaintiff treble damages, plus attorneys' fees, interest and costs.

## COUNT III VIOLATION OF M.G.L. CHAPTERS 93A AND 176D-ACE

78. The plaintiff realleges and reasserts the allegations set forth in Paragraphs 1-77 above as if fully set forth herein.

79. On April 2, 2025, the plaintiff sent a MGL 93A/176D letter to ACE, certified mail return receipt requested, setting forth a detailed summary of the allegations of unfair and deceptive practices committed by Hartford as well as Hartford's willful and knowing violation of MGL c. 93A.

80. A true and accurate copy of the plaintiff's demand pursuant to MGL Chapter 93A dated April 2, 2025 is attached hereto as **Exhibit E.**

81. ACE has not responded to the plaintiff MGL c. 93A/176D letter.

82. ACE has committed the following unfair and deceptive acts and practices in its handling of the plaintiff's claims, including acts identified as unfair claim practices pursuant to MGL c. 176D, section 3(9);

    (d) Refusing to pay claims without conducting a reasonable Investigation based upon all available information;

    (f) Failing to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear

83. The unfair and deceptive acts of ACE were made willfully and in knowing violation of MGL. c93A and MGL c. 176D.

84. As a result of the unfair and deceptive practices and willful and knowing violations of MGL c. 93A, the plaintiff was deprived of the opportunity to engage in a timely settlement process and deprived of insurance benefits, his losses have been exacerbated, he has been otherwise damaged, and the Court should award plaintiff treble damages, plus attorneys' fees, interest and costs.

### THE PLAINTIFF DEMANDS A TRIAL BY JURY

WHEREFORE, the plaintiff demands that judgment enter against the defendants, Sentinel, the Hartford and ACE, in an amount deemed just and proper, treble damages and attorney's fees pursuant to MGL c. 93A and 176D, costs and interest and such other relief as the Court deems just.

The Plaintiff,
KYLE WALLACE
By his Attorneys,

_____
Richard J. Sullivan, Esq., BBO# 554085
James M. McLaughlin, Esq. BBO# 676079
SULLIVAN & SULLIVAN, LLP
83 Walnut Street
Wellesley, MA  02481
(781) 263-9400
rsullivan@sullivanllp.com
jmclaughlin@sullivanllp.com